IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CALVIN FRIERSON                                                                           PLAINTIFF

V.                                         Case No. 10-CV-1005

CITY OF HAMBURG, ARKANSAS and
POLICE CHIEF TOMMY BREEDLOVE                                          DEFENDANTS

### MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendants.  (Doc. 13). Plaintiff Calvin Frierson has responded.  (Doc. 17).  Defendants have filed a reply.  (Doc. 20).  The Court finds the matter ripe for consideration.

### BACKGROUND

Calvin Frierson, an African American, was employed as police officer for the city of Hamburg, Arkansas, for over fifteen years.  In 2004, Frierson was promoted to the rank of sergeant. On April 21, 2009, close to midnight, Frierson assisted the Ashley County Sheriff's Department in pursuing a vehicle traveling at a high rate of speed through Hamburg.  The speeding vehicle began heading south on Main Street.  While in pursuit of the vehicle, Frierson was able to identify the driver of the vehicle as Vance Davis.  A passenger was in the vehicle but Frierson could not identify him.[1]  During the pursuit, Davis attempted to sideswipe Frierson's vehicle and force it off the road several times.

---

[1] The passenger in the vehicle was later identified as Jimmy Davis, the owner of the car Vance Davis was driving.  Vance Davis had stolen the car from Jimmy Davis, who was not charged with any crime in connection with this incident.

The speed of both vehicles involved in the pursuit reached eighty-five to ninety miles per hour on Main Street in the vicinity of both businesses and residences. Frierson fired three shots at the right front tire of Davis's vehicle in an attempt to stop Davis. The vehicle did not stop and increased its speed to over 100 miles per hour. Frierson then fired two shots at the right rear tire of Davis's vehicle, causing the tire to deflate.

During the chase, Frierson advised the dispatcher to notify the Hamburg Chief of Police, Tommy Breedlove, that shots had been fired. At 1:10 a.m., the dispatcher notified Chief Breedlove that shots had been fired during a high-speed chase but that she did not know whether Frierson fired the shots or whether the suspect fired the shots.

After the pursuit ended and Davis was apprehended, Frierson explained what happened to Officer David Oliver. Around 7:00 a.m., Frierson asked Oliver to notify Chief Breedlove that Frierson was going home and that if Frierson did not talk to Chief Breedlove by 8:00 a.m., Frierson would talk to Chief Breedlove later. Chief Breedlove learned that Frierson shot at Davis's vehicle from Officer Oliver on the morning of April 21, 2009.

At the time of the high-speed chase, the Hamburg Police Department had a policy regarding the use of firearms. The relevant portions of this policy are as follows:

> Personnel shall not fire at a fleeing suspect when there appears to be no immediate danger that the suspect will cause injury or death to another person; nor is there any justification, under most circumstances, to fire at a fleeing vehicle where in the lives of innocent persons may be endangered.
>
> When shots are fired by police personnel, for whatever reason, except at an authorized training function, the chief of police will be notified immediately.

On April 29, 2009, Chief Breedlove terminated Frierson for violation of departmental policies. Frierson alleges other instances in which Caucasian officers of the Hamburg Police

Department violated departmental policies and were not terminated. Shannon Shaver damaged a patrol car by ramming it into the same suspect, Vance Davis, during a vehicular pursuit. Officer Shaver failed to follow the chain of command because Shaver reported the incident directly to Chief Breedlove instead of Shaver's immediate supervisor. Officer Shaver was not disciplined for this incident. David Oliver, performed a PIT (precision immobilization technique) maneuver and rammed a suspect vehicle at 50 miles per hour. Officer Oliver was not disciplined for this incident. Frierson wrote up John Turner for failing to follow policy procedure and insubordination when he failed to wear his bulletproof vest and then made an obscene gesture towards Frierson when Frierson wrote him up for the violation. Chief Breedlove counseled Officer Turner and advised him never to act this way again. Frierson alleges that he knew of two other Caucasian officers who did not wear a bulletproof vests, in violation of departmental policy, and were not disciplined.

Approximately nine years before Frierson was terminated, he stated that he saw a noose hanging by a thumbtack on the bulletin board in Chief Breedlove's office. The noose was made out of some material about as thick as an ink pen. According to Plaintiff, he told Chief Breedlove that it was offensive to him, and Chief Breedlove directed Frierson to pull it off the bulletin board and throw it away. This incident was never discussed again between Frierson and Chief Breedlove.[2]

On January 21, 2010, Frierson brought this lawsuit against the City of Hamburg, Arkansas and Police Chief Tommy Breedlove, alleging race discrimination in violation of his rights under 42 U.S.C. § 1983. This case is presently before the Court on a Motion for Summary Judgment filed by Defendants. (Doc. 13).

---

[2] Chief Breedlove denies ever having a noose in his office. However, the Court construe the facts in the light most favorable to Frierson, the non-moving party.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Under this standard, the inquiry is not whether the evidence favors one side or the other, but "whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). When considering a summary judgment motion, the Court "must view the evidence 'in the light most favorable to the nonmoving party.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 445 (8th Cir. 2008). To defeat a motion for summary judgment, however, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *F.D.I.C. v. Bell*, 106 F.3d 258 (8th Cir. 1997). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010).

**DISCUSSION**

Frierson may survive summary judgment by providing direct evidence of race discrimination or by providing evidence that creates an inference of discrimination under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03

(1973); *see Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) (applying *McDonnell Douglas* to a section 1983 claim).  Frierson has presented no direct evidence, so the Court will apply the *McDonnell Douglas* framework.  First, Frierson must establish a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently.  *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).  If he establishes a prima facie case, then the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for terminating Frierson.  *See Torgerson v. City of Rochester*, 605 F.3d 584, 595 (8th Cir. 2010).  If Defendants provide such a reason, Frierson must then show that the proffered reason is a pretext for the unlawful discrimination.  *See id*.

> Without contesting the first three elements of a prima facie case, Defendants argue that there are no similarly situated Caucasian employees who were treated differently than Frierson.  The Eighth Circuit has pointed out the following:

> [t]here appear to be conflicting lines of cases in our Circuit regarding the standard for determining whether employees are similarly situated at the prima facie stage of the *McDonnell Douglas* burden-shifting framework.  One line sets a "low threshold" for employees to be considered similarly situated, requiring only that the employees "are involved in or accused of the same or similar conduct and are disciplined in different ways."  The other line ... is more rigorous at the prima facie state and requires that the employees must be "similarly situated in all respects."

*Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851-52 (8th Cir. 2005).  In considering these two lines of cases, the Eighth Circuit has noted that the "burden of establishing a prima facie case of disparate treatment is not onerous" and that using a more rigorous standard "might conflate the prima facie

case with the ultimate issue of discrimination." *Id.* at 852 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) and *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308 (8th Cir. 1994)).  Thus, the Eighth Circuit has chosen to follow the low-threshold standard.  *Id.*; *see Wimbley v. Cashion*, No. 08-2829, 2009 WL 4348276, at *2 (8th Cir. Dec. 3, 2009) (applying the low-threshold standard).

Here, Frierson points to four different instances in which he claims that he was treated differently than Caucasian police officers:  (1) an officer rammed a fleeing suspect's vehicle, damaged the patrol car, and failed to follow the chain of command in reporting the incident (the incident was reported directly to Chief Breedlove instead of the officer's immediate supervisor); (2) an officer performed a PIT maneuver at 50 miles per hour; (3) an officer was cited for insubordination and failing to wear a bulletproof vest; and (4) other Caucasian officers do not wear bulletproof vests.  In each of these four instances, the officers were not terminated for their conduct, and in some cases, were not disciplined at all.  However, even applying the low-threshold standard, none of these incidents involved conduct similar to Frierson's conduct, which was using a firearm to stop a fleeing vehicle.  While Frierson cited to instances where Caucasian officers violated some departmental policy and were not terminated, the violations of those officers are not similar to Frierson's violation.  Frierson's violation was more serious than the violations committed by the Caucasian officers.  Importantly, a firearm was not involved in any of the four instances cited by Frierson.  Frierson's evidence is not sufficient to show that similarly situated non-African-American employees were treated differently than he was.  Thus, Frierson cannot establish a prima facie case of race discrimination.

Even if Frierson did satisfy his initial burden under the *McDonnell Douglas* framework, Defendants have articulated a legitimate, nondiscriminatory reason for terminating his employment: Frierson violated departmental policy when he used his firearm, while traveling down Main Street in Hamburg at 80 miles per hour, to stop a fleeing vehicle that contained a passenger. Thus, the burden returns to Frierson to show that this proffered reason for terminating him was pretextual. At this stage, the test for determining whether Frierson is similarly situated to any of the Caucasian employees in the Hamburg Police Department is rigorous. *Wimbley*, 2009 WL 4348276, at *3; *Rodgers*, 417 F.3d at 843. Frierson must show that he and other officers are similarly situated "in all relevant respects." *Wimbley*, 2009 WL 4348276, at *3. "To be probative of pretext, the misconduct of the more leniently disciplined employees must be of comparable seriousness." *Rodgers*, 417 F.3d at 853.

Here, Frierson and the other Caucasian officers that Frierson references are not similarly situated in all relevant aspects. None of the instances regarding the Caucasian officers involve the use of a firearm to stop a fleeing vehicle. In fact, these instances cited by Frierson do not involve the use of a firearm at all. The misconduct of the Caucasian officers is not of comparable seriousness to Frierson's violation. Thus, the instances regarding the Caucasian officers are not probative of pretext.

Although Frierson's brief does not clearly argue what evidence he believes supports an inference of pretext, the Court assumes that Frierson points to the alleged incident with the noose in Chief Breedlove's office as evidence of pretext. According to Frierson, the noose was removed after he informed Chief Breedlove that it was offensive. This incident occurred nine years prior to

Frierson's termination.  Furthermore, Frierson has been promoted since the incident with the noose. Thus, the Court finds that this incident is not direct evidence that Chief Breedlove was motivated by a discriminatory reason when he terminated Frierson.  In sum, Frierson has failed to present any evidence that would support a reasonable inference of pretext.

Frierson cannot establish a prima facie case of race discrimination.  Even if he could establish a prima facie case of race discrimination, he cannot show that Defendants' stated reason for Frierson's termination was pretextual.  Thus, Frierson's race discrimination claim cannot survive summary judgment under *McDonnell Douglas*.

## **CONCLUSION**

Upon consideration, the Court finds that Defendants' Motion for Summary Judgment should be and hereby is **GRANTED**.  Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED, this 18th day of April, 2011.

        /s/ Harry F. Barnes
    Hon. Harry F. Barnes
    United States District Judge